UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

J'KENDRIC JIRELLE AGEE,

                Plaintiff,

    v.                                                  9:19-CV-0195
                                                             (MAD/ ML)

MR. ANDREW CUOMO, et al.,

                Defendants.

---

APPEARANCES:

J'KENDRIC JIRELLE AGEE
17-B-0759
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

MAE A. D'AGOSTINO
United States District Judge

**DECISION AND ORDER**

**I.  INTRODUCTION**

Pro se plaintiff J'kendric Jirelle Agee ("plaintiff"), a New York State inmate, commenced this civil rights action on or about February 13, 2019, with the filing of a complaint, Dkt. No. 1 ("Compl."), accompanied by an application for leave to proceed in forma pauperis ("IFP"), Dkt. No. 2. Following review of the complaint and IFP application pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A, the Court issued a Decision and Order on April 23, 2019, granting plaintiff's IFP application and dismissing the complaint with leave to amend. Dkt. No. 5 ("April Order"). Plaintiff availed himself of the opportunity to amend his

pleading, and the Court received plaintiff's amended complaint on or about May 28, 2019. Dkt. No. 6 ("Am. Compl."). The amended complaint names the following four defendants: (1) New York State Police ("NYSP") Supervising Investigator of Troop E-Zone David Stebbins; (2) NYSP Investigator Brett E. Stover; (3) former Cayuga County Assistant District Attorney Brian T. Leeds; and (4) Cayuga County. *Id.* at 2, 5 n.1. The Clerk has now forwarded the amended complaint to the Court for review.

## II. DISCUSSION

### A. Legal Standard

The legal standard governing the review of a pro se inmate-plaintiff's complaint pursuant to Sections 1915 and 1915A was discussed at length in the April Order and will not be restated in this Decision and Order. *See* April Order at 2-4.

### B. Summary of the Amended Complaint

The following facts are as alleged in plaintiff's amended complaint.

On February 28, 2016, plaintiff was confined in Auburn Correctional Facility ("Auburn C.F."), a facility operated by the New York State Department of Corrections and Community Supervision ("DOCCS"), serving the last ten days of his one-year post-release supervision violation. Am. Compl. at 2. At approximately 9:20AM, plaintiff was pat-frisked in front of his cell by correctional officers and then escorted to "the front of the company," where he was "handcuffed . . . and taken to the Special Housing Unit." *Id.* Although it is not expressly alleged in the amended complaint, plaintiff was accused on that date of possessing a state-issued razor blade in the waistband of his pants during the pat-frisk. *See* Dkt. No. 6-1 ("Am. Compl. Exhs.") at 13.

2

On March 8, 2016, defendant Leeds provided defendant Stover with confidential prison disciplinary documentation reflecting that plaintiff was charged with violating prison rules by possessing a weapon on February 28, 2016. Am. Compl. at 2-3; Am. Compl. Exhs. at 5. Liberally construed, the amended complaint alleges that plaintiff did not possess a weapon at Auburn C.F. on February 28, 2016, and that the documents generated to support the disciplinary charge are false. *See* Am. Compl. at 3. Defendant Leeds "directed [defendant] Stover to copy" the contents of the disciplinary documents "onto a [f]elony complaint." *Id.* at 2. Defendant Leeds then presented the felony complaint to an Auburn City Court Judge who "issued a[] warrant for . . . plaintiff['s] fals[e] arrest," accusing him of first-degree making/possessing dangerous contraband in prison in violation of New York State Penal Law § 205.25(2). *Id.* at 3; Am. Compl. Exhs. at 2. Plaintiff was released from DOCCS custody on March 9, 2016, and immediately rearrested by NYSP for making/possessing prison contraband. Am. Compl. at 3. On the same date, plaintiff and an "unidentified white male," who was also charged with the same crime, were arraigned in Auburn City Court. *Id.* Although plaintiff and the white male were both remanded to Cayuga County Jail, plaintiff was remanded on $3,000 cash or $6,000 bond, while the white male was remanded on $2,500 or $5,000 bond. *Id.*

On March 15, 2016, a preliminary hearing was held in Auburn City Court in connection with the criminal charges pending against plaintiff and the unidentified while male. Am. Compl. at 3. Defendant Leeds "offered the white inmate six months jail time th[e]n offered . . . plaintiff a 1 and 1 half to 3 year term of imprisonment." *Id.* The other inmate accepted the plea offer; plaintiff declined it. *Id.*

3

During the preliminary hearing, the People of the State of New York offered only one witness, Auburn C.F. Correctional Officer Keith Vincent, who authored the memorandum on February 28, 2016, describing how and when he discovered prison contraband on plaintiff. *Id.*; Am. Compl. Exhs. at 5. Correctional Officer Vincent testified at the preliminary hearing that "he never spoke to [defendant] Stover" about the incident. *Id.* At the conclusion of the hearing, the presiding Auburn City Court Judge concluded that the prosecution had established probable cause for plaintiff's arrest. *Id.*

On March 22, 2016, defendant Leeds visited Auburn C.F. and "obtained the alleged contraband in question[.]" Am. Compl. at 4. During the subsequent trial in November 2016, defendant Stover testified that he received "all the information that [he] used to complete the felony complaint" from defendant Leeds. *Id.* The next day, the jury found plaintiff guilty.[1] *Id.* Plaintiff was sentenced on March 9, 2017, to three-to-six years imprisonment. *Id.*

In and around December 2016 and January 2017, the "People of the State of New York [disclosed] that [Auburn C.F. Correctional Officer Matthew Cornell] admitted back in May of 2015 that he planted contraband on an inmate [in Auburn C.F.] to break up a[] gang." Am. Compl. at 4; Am. Compl. Exhs. 7-8, 10-11. The complaint does not allege that Correctional Officer Cornell planted a weapon on plaintiff at any time, including on February 28, 2016.

Liberally construed, plaintiff's amended complaint asserts (1) Fourteenth Amendment due process claims against defendants Stover and Leeds; (2) Fourteenth Amendment equal

---

[1] The amended complaint alleges that plaintiff was found guilty on "the 17th day of February, 2016." Am. Compl. at 4. The Court has construed the reference to "February" to be an error in light of plaintiff's earlier allegation that the trial occurred in "November, 2016." *Id.* Plaintiff's original complaint also alleges that the jury rendered its verdict on November 17, 2016. Dkt. No. 1 at 5.

4

protection claims asserted against all defendants; (3) false arrest claims asserted against defendants Stover and Leeds; and (4) Eighth Amendment cruel and unusual punishment claims against all defendants. *Id.* at 4-17.

**C. Analysis**

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993)

**1. Fourteenth Amendment**

Liberally construed, plaintiff's amended complaint asserts Fourteenth Amendment abuse of process and substantive due process claims against defendants Stover and Leeds arising from allegations that they improperly used plaintiff's prison disciplinary records to initiate a criminal prosecution against him in Auburn City Court. Am. Compl. at 4-6. The amended complaint also asserts a Fourteenth Amendment equal protection claim against all defendants. *Id.* at 14-17.

**a. Abuse of Process – Defendants Stover and Leeds**

As discussed in the April Order, "[a] claim for malicious abuse of criminal process – assuming it is adequately pled – . . . alleges a deprivation of [due process] and may be asserted under section 1983." *Peter L. Hoffman, Lotte, LLC v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013). To state a plausible abuse of process claim, a complaint must allege that the defendant "(1) employed regularly issued legal process to compel

5

performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Town of Southampton*, 523 F. App'x at 771 (citing *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003)) (internal quotation marks and alterations omitted). With respect to the third element, "malicious motive alone does not give rise to a cause of action for abuse of process." *Savino*, 331 F.3d at 76 (internal quotation marks and alteration omitted). Instead, a plaintiff must "establish that the defendants had an improper *purpose* in instigating the action." *Id.* (emphasis in original).

Similar to plaintiff's original complaint, the amended complaint clearly alleges that defendants Stover and Leeds acted with malicious motives in instigating the criminal prosecution against plaintiff arising from the alleged possession of a weapon in Auburn C.F. on February 28, 2016. *See, e.g.,* Am. Compl. at 5 ("Both Defendants [Stover and Leeds] maliciously abused the process of the[ir] respective fields with the intent of compel[l]ing the Court to issue an arrest warrant[.]"). There are no allegations, however, plausibly suggesting that defendants had an improper purpose in investigating the incident at Auburn C.F. on February 28, 2016, and commencing criminal proceedings in state court. Plaintiff's allegation that defendants Stover and Leeds initiated the criminal action against plaintiff to cause him harm and "transform[] a[] clearly civil charge into criminal punishment," *id.* at 4, 6, does not plausibly allege an improper or "collateral purpose beyond or in addition to his criminal prosecution." *Savino*, 331 F.3d at 77; *see also Coleman v. City of N.Y.*, 585 F. App'x 787, 788 (2d Cir. 2014) (concluding that the plaintiff's allegation that the "two officers sought to punish him" does not constitute a collateral objective). Instead, plaintiff's amended complaint

acknowledges that defendants Leeds and Stover used the prison disciplinary records "to vindicate public justice." Am. Compl. at 6. Accordingly, with respect to the Fourteenth Amendment abuse of process claim asserted against defendants Stover and Leeds, plaintiff's complaint fails to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### b. Substantive Due Process – Defendants Stover and Leeds

The substantive component of the Due Process Clause of the Fourteenth Amendment "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (internal quotation marks omitted). Government conduct violates a plaintiff's Fourteenth Amendment right to substantive due process only where it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

Plaintiff's amended complaint asserts a substantive due process claim against defendants Stover and Leeds based on allegations that those individuals initiated a criminal prosecution against plaintiff for allegedly making/possessing prison contraband while confined in Auburn C.F. on February 28, 2016. Am. Compl. at 5-6. More specifically, plaintiff alleges that defendants Stover and Leeds improperly used plaintiff's prison disciplinary records to support the felony complaint and subsequent application for an arrest warrant. *Id.* Even liberally construed, and with due consideration for plaintiff's pro se status, the foregoing allegations do not support a cognizable substantive due process claim. The conduct of defendants Stover and Leeds as alleged in the amended complaint does not "shock the . . .

7

conscience," nor can defendants' conduct be fairly characterized "egregious" or "outrageous." *Lewis*, 523 U.S. at 847 n.8. Accordingly, plaintiff's substantive due process claims asserted against defendants Stover and Leeds are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### c. Equal Protection – Defendants Stover, Leeds, Stebbins, Cayuga County

The Equal Protection Clause of the Fourteenth Amendment, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws," U.S. CONST. AM. XIV, § 1, "requires the government to treat all similarly situated individuals alike." *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). Ordinarily, equal protection claims arise from allegations that the government's classifications "treat certain groups of citizens differently than others." *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 198 (2d Cir. 2019) (internal quotation marks and emphasis omitted). In *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000), however, the Supreme Court also recognized "a class-of-one theory for equal protection claims, under which a single individual can claim a violation of [his] Equal Protection rights based on arbitrary disparate treatment." *NRP Holdings LLC*, 916 F.3d at 198 (internal quotation marks omitted).

"Under a 'class of one' equal protection claim, a plaintiff must allege that (1) '[he] has been intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'" *Young*, 705 F. Supp. 2d at 205 (quoting *Vill. of Willowbrook*, 528 U.S. at 564). "In order to state an equal protection violation under [Section] 1983, 'it is axiomatic that plaintiff must allege that similarly situated persons were treated

differently.'" *Id.* at 205 (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir.1994)).

Plaintiff's amended complaint in this case cites two separate and distinct grounds for his equal protection claims. First, plaintiff alleges that the manner in which he was criminally charged for possessing/making prison contraband under New York Penal Law violated DOCCS Directive 6910. Am. Compl. at 15. According to plaintiff, DOCCS Directive 6910 mandates that the "Criminal Prosecution Liaison at Auburn [C.F.]" must complete an "Information/Evidence packet" that is submitted to "both the District Attorney's Office and proper Police Agency." *Id.* Plaintiff alleges that DOCCS Directive 6910 was not complied with and, instead, "an unidentified DOCCS employee supplied defendant . . . Leeds with prison disciplinary documents" and that defendant Leeds then used those documents to initiate the criminal prosecution against plaintiff. *Id.*

With due regard to plaintiff's pro se status, the foregoing allegations do not give rise to a plausible equal protection claim under the Fourteenth Amendment, or any constitutional claim more generally. The allegations do not accuse any of the defendants of treating plaintiff differently based on his membership in a protected class or that he was treated differently than other similarly situated people. For that reason, any purported equal protection claim is subject to dismissal. Moreover, it is well established that the violation of a DOCCS policy does not give rise to a cognizable constitutional claim. *See, e.g., Joseph v. Marche*, No. 17-CV-6509, 2019 WL 1172382, at *4 (W.D.N.Y. Mar. 13, 2019) (citing cases). Accordingly, any claim purportedly asserted in the amended complaint based on plaintiff's allegations that defendants did not comply with DOCCS Directive 6910 is dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915(e)(2)(B)(ii) and 1915A(b)(1).

The second ground upon which plaintiff relies for asserting a Fourteenth Amendment equal protection claim against defendants is that an unidentified white male was allegedly charged by NYSP on the same date as plaintiff with the same crime but that defendant Leeds offered the white male a plea bargain that included only six months imprisonment, whereas plaintiff was offered one and one-half years to three years imprisonment. Am. Compl. at 16. Plaintiff contends that defendant Leeds' plea negotiations were motivated by plaintiff's race and appearance as a "big black man." *Id.*

Liberally construed, these allegations purport to give rise to a "class of one" equal protection claim under the Fourteenth Amendment. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (citing cases). As noted above, a class of one claim arises when a plaintiff is "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564; *accord, Young*, 705 F. Supp. 2d at 204-05. "[T]he standard for determining whether another person's circumstances are similar to the plaintiff's must be. . . whether they are *prima facie* identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (internal quotation marks omitted). More specifically, a complaint asserting a class of one claim must allege facts plausibly suggesting that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Neilson*, 409 F.3d at 105 (citing *Vill. of*

10

*Willowbrook*, 528 U.S. at 565); *accord, Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012); *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010).

The Court can envision a number of facts not alleged in the amended complaint that would account for the difference in plea offers extended to plaintiff and the unidentified white male in this case. For example, there are no allegations in the amended complaint concerning plaintiff's criminal and prison disciplinary history or the other white male's criminal and prison disciplinary history. There are also no allegations describing the circumstances under which the white male was charged with the same crime as plaintiff. The amended complaint only alleges that plaintiff and the white male were arrested on the same date and charged with the same crime but offered different plea bargains by defendant Leeds. Am. Compl. at 3, 16. Without more, those allegations do not plausibly allege that the circumstances under which the two individuals were arrested and prosecuted are "prima facie identical." *Nielson*, 409 F.3d at 105; *see also NRP Holdings LLC*, 916 F.3d at 198 (affirming the dismissal of the plaintiff's class of one equal protection claim because the complaint failed to provide "[]sufficient detail about the 'other developers' and the projects that were allegedly approved" as compared to the plaintiff's project that was rejected); *Feiner*, 694 F.3d at 222 ("The purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment."). Accordingly, plaintiff's equal protection claim based on allegations that an unidentified white male was offered a shorter term of imprisonment during plea negotiations than plaintiff is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Eighth Amendment – Defendants Stover, Leeds, Stebbins, Cayuga County

Plaintiff's second cause of action is asserted against all of the defendants and accuses them of inflicting "cruel and unusual punishment" on him. Am. Compl. at 6-14. The Eighth Amendment protects convicted prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). It does not, however, extend any rights to pretrial detainees. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("Because as a pre-trial detainee [the plaintiff] was not being 'punished,' the 'cruel and unusual punishment' proscription of the Eighth Amendment does not apply."). In this case, all the defendants' conduct of which plaintiff complains occurred before plaintiff was convicted in November 2016 of making/possessing prison contraband. Accordingly, the Eighth Amendment does not afford plaintiff any protection and his claims are therefore dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. False Arrest – Defendants Stover and Leeds

Liberally construed, plaintiff's amended complaint asserts a Section 1983 false arrest claim against defendants Stover and Leeds. *See, e.g.,* Am. Compl. at 12 ("Defendants Mr. Stover and Mr. Leeds acted in bad faith when such defendants knowingly and willing[ly] committed fraud, perjury and[] misrepresentation when they commenced a[] criminal action against your plaintiff that le[d] to him being fals[e]ly arrested and fals[e]ly imprisoned . . . due to such defendants['] malicious and sadistic[] behavior.").

In general, the torts of false arrest and false imprisonment under Section 1983 and New York State law are "substantially the same" except for "the requirement that the

12

constitutional tort be under color of state law." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) (internal quotation marks omitted); *accord, Jenkins v. City of* N.Y., 478 F.3d 76, 84 (2d Cir. 2007); *see also Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 473 (1972). "Under New York law, the elements of a false imprisonment claim are: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and alterations omitted); *accord, Wright v. Musanti*, 887 F.3d 577, 587 (2d Cir. 2018). Where probable cause exists for the arrest, it is "an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).

In this case, plaintiff's amended complaint alleges that, during the preliminary hearing in Auburn City Court on March 15, 2016, Auburn C.F. Correctional Officer Vincent testified concerning his discovery of the razor blade in the waistband of plaintiff's pants on February 28, 2016 – the incident that gave rise to the criminal prosecution for making/possessing prison contraband under New York Penal Law. Am. Compl. at 3. The amended complaint also alleges that the Auburn City Court Judge presiding over the preliminary hearing concluded that, based on Correctional Officer Vincent's testimony, probable cause existed for plaintiff's arrest. *Id.* "[T]he finding at that hearing that probable cause existed is fatal to any claim for false arrest or imprisonment asserted by [the p]laintiff." *Lyons v. Davis*, No. 17-CV-4504, 2018 WL 4759742, at *4 (S.D.N.Y. Sept. 30, 2018). In addition, "New York courts have consistently held that a civil rights claim rooted in the absence of probable cause is barred by the collateral estoppel doctrine where there was a prior judicial determination that

13

probable cause existed." *Erwin v. Russi*, 97-CV-5818, 1998 WL 474096, at *5 (S.D.N.Y. Aug. 11, 1998) (citing cases). Accordingly, because plaintiff's amended complaint fails to allege sufficient facts plausibly suggesting that plaintiff's arrest was not privileged, the false arrest claim asserted against defendants Stover and Leeds is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's amended complaint (Dkt. No. 6) fails to state one or more claims against defendants upon which relief may be granted; and it is further

**ORDERED** that this action is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly; and it is further

**ORDERED** the Clerk shall serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated: July 15, 2019
       Albany, New York

/s/ Mae A. D'Agostino
Mae A. D'Agostino
U.S. District Judge